UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DANIEL AMY,
      Plaintiff,

vs.

BOARD OF TRUSTEES OF
FLORIDA INTERNATIONAL
UNIVERSITY,
      Defendant.
_____/

COMPLAINT

Plaintiff, Daniel Amy, by his undersigned counsel, hereby files this Complaint, against the Defendant, the Board of Trustees of Florida International University, and in support hereof, the Plaintiff states as follows:

## I.
## PRELIMINARY STATEMENT

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12101, *et seq.,* which prohibits disability discrimination, against employees, in the workplace, as well as the amendments thereto, as set forth in ADAAA of 2009, due to his status as a "qualified individual with a disability," and as a result of not obtaining the requested reasonable accommodation, he was subjected to an adverse employment action, specifically, the Plaintiff was separated from his position as Graduate Assistant/Student, Florida International University Finance Department Program and he

1

lost his position as a Graduate Assistant, leading to a doctorate, in Business Administration, Finance, with the Defendant, in the Spring of 2019.

2. This action is also brought under the anti-retaliation provision of the ADA, 42 U.S.C. Section 12203 (a), since the Plaintiff properly engaged in prior protected activity, within an internal administrative process, he had opposed any act of chapter, made unlawful by this statute.

3. Plaintiff is a "qualified individual with a disability," under the ("ADA"), 42 U.S. C. Section 12101, *et seq.*, which prohibits disability discrimination, against employees, in the workplace, such a prohibition is further outlawed and prohibited, by the amendments thereto, ADAAA of 2009; since Plaintiff suffers from Attention Deficit and Hyperactivity Disorder ("ADHD"), medical conditions, which impairs the following major life activities, namely, processing information in a timely manner.

4. However, Plaintiff, Daniel Amy, was still capable of performing the essential functions of his position, as a Graduate Assistant/Student, for the Defendant, provided that he was provided with, certain reasonable accommodations, such as being able to use instructor lecture notes, as well as a reduced course work load, and an extended graduation period, to which he was legally entitled, as a "qualified individual with a disability," under the ADA, 42 U.S.C. Section 12101, *et seq.*, and the 2009 amendments, thereto.

5. The Defendant failed and or refused to provide the Plaintiff, with the requested reasonable accommodations, thereby causing him to sustain an adverse employment action, the loss of active paid employment, as a Graduate Assistant/Student for the Defendant, in violation

of the ADA, 42 U.S.C. Section 12101, *et seq.*, and the 2009 Amendments thereto, since he was eventually excluded from the required academic program, in the Spring of 2019; and then, as a result of this exclusion, he consequently lost his position, as an Graduate Assistant/Student, with the Defendant.

6. In short, the Defendant has committed substantive statutory violations, pursuant to 42 U.S.C. Section 12101, *et seq.*, and the 2009 Amendments thereto, for which there is no viable defense.

7. Plaintiff is entitled, to substantive legal relief, as a direct and proximate result of the substantive statutory violations, committed by the Defendant, and he is entitled to reinstatement and associated monetary relief.

## II.
## JURISDICTION AND VENUE

8. Jurisdiction over the Plaintiff's claims is conferred on this Court, pursuant to 29 U.S.C. Section 1132, 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343 (a)(4).

9. Venue is properly placed in this district, pursuant to 28 U.S.C. 1391(b), because for all applicable dates and times, as set forth in this Complaint, the predicate discriminatory and retaliatory acts, as well as the acts underlying applicable statutory violations, occurred within the Southern District of Florida.

10. On or about September 6, 2019, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging a claim of disability discrimination.

11. On November 17, 2021, the Equal Employment Opportunity Commission entered a Letter of determination, finding reasonable cause to believe that the Defendant retaliated against the Plaintiff for engaging in protected activity and hence, the Commission adjudicated both of his claims, the disability discrimination claim, and the retaliation claim. [*See*, the Letter of Determination, issued by the Equal Employment Opportunity Commission, attached hereto, as **EXHIBIT A**].

12. On May 3, 2022, the United States Department of Justice, acting through its Disability Rights Section, issued a Notice of Right to Sue Letter, to the Plaintiff, Daniel Amy, providing him, within ninety (90) days in which to file suit in federal district court. [*See*, the Department of Justice's Notice of Right to Sue Letter, attached hereto, as **EXHIBIT B**.]

13. Plaintiff, Daniel Amy, has initiated this action within ninety (90) days of his receipt of the Right to Sue Letter, from the United States Department of Justice, Disability Rights Section.

14. All pertinent conditions precedent, have indeed, been satisfied, prior to the initiation of this action, in federal district court, including all internal administrative remedies, which the Plaintiff may have had, by statute, and in addition, Plaintiff has fully complied with internal governance policies and procedures of the Defendant, he exhausted these internal procedures, and therefore, the Plaintiff can properly file this action in federal district court.

## III.
## PARTIES

15. Plaintiff, Daniel Amy ("AMY"), at all material times herein, was employed as a Graduate Assistant/Student, of the instructional staff of the Defendant, within the Finance Department, he was fully capable of performing the essential functions of his position, on site within the college facility, operated and administered by the Defendant, provided that, he was granted his requested reasonable accommodations, namely, the use of instructor's notes, and a reduced course load as well as delayed graduation date.

16. Defendant, the Board of Trustees of Florida International University, ("FIU"), is a public university, located in Miami, Miami Dade County, Florida, governed by its Board of Trustees, it has the authority to administer and operate educational programs, within the university community; and it also has the express authority to administer personnel practices and procedures, for employees, such as the Plaintiff, who were members instructional staff, of the Defendant, FIU.

## IV.
## FACTUAL ALLEGATIONS

17. Plaintiff, AMY, was previously employed, as a Graduate Assistant/Student, for the Defendant, FIU, and he has been so employed, as an instructional staff member, in the FIU Finance Department, since on or about August, 2018.

18. Defendant, FIU, has an internal governance policy, known as, Policy No. 106, whereby FIU has recognized that it has a legal duty, to properly accommodate students and employees, with disabilities.

19. The Policy Statement of FIU Policy No. 106, reads in pertinent part as follows:

    Florida International University (the University) affirms its commitment to ensure that each member of the University community shall be permitted to work or study in an environment free from any form of illegal discrimination, including race, color sex, pregnancy, religion, age, disability, national origin, marital status, and veteran status. The University recognizes its obligation to work towards a community in which diversity is valued and opportunity is equalized. This Regulation establishes procedures for an applicant or a member of the University community (faculty, staff, affiliated third parties and or student) to file a complaint of alleged discrimination or harassment. It shall be a violation of this Regulation for any member of the University community to discriminate against or harass any member of the University community or applicant. Discrimination and harassment are forms of conduct that shall result in disciplinary nor other action as provided by the Regulations/Policies of the University.

20. On November 1, 2018, the Plaintiff registered with the FIU Disability Resource Center ("DRC"), and the DRC Representative. Stephen P. Loynaz, initially provided three accommodations to the Plaintiff, the use of a digital recorder, allowing additional time for the taking of examinations, and the placement in a minimal distraction examination room.

21. In addition, Mr. Loyanz stated that additional accommodations, such as the use of instructor lecture notes, and a reduced course load, along with a delayed graduation date, might also be available, but these potential accommodations, would require Finance Department faculty approval, from the following faculty members, Dr. Ozde Oztekin; Dr. Qiang Kang and Dr. Ali Gungoraydinoglu.

22. Following the Plaintiff's registration of his disability with the University's Disability Resource Center, duly authorized representatives of FIU Finance Department Faculty failed to engage in an "interactive process," with the Plaintiff, to determine the nature of

his disabilities, and any reasonable accommodations, which may have been needed, for him to succeed as a Graduate Assistant/Student.

23. Representatives of FIU Finance Department Faculty, failed to engage in any constructive dialogue with the Plaintiff, to determine the nature of his disabilities, and any reasonable accommodations which may have been needed.

24. The failure of the Finance Department FIU to engage in an interactive process with the Plaintiff, or to engage in an informal dialogue with him, to determine the nature of his disabilities, and any reasonable accommodations which may have been needed, was violative of substantive ant-discrimination as well as the internal governance of FIU, known as Policy No. 106.

25. The failure of Finance Department FIU Faculty, to engage in an interactive process, with the Plaintiff, or to engage in an informal dialogue with him, to determine the nature of his disabilities, and any reasonable accommodations, which may have been needed, was the proximate cause of the losses, both monetary and non-pecuniary, suffered by the Plaintiff.

26. Unfortunately, after receiving the initial accommodations from the DRC, the FIU Finance Department faculty expressed no interest in assisting the Plaintiff, in securing the additional needed accommodations, such as, the use of instructor lecture notes, and a reduced course load, along with a delayed graduation date, which were needed, consistent with the Plaintiff's status as a "qualified individual with a disability."

27. Although the Plaintiff repeatedly sought these additional accommodations, with the applicable members of the FIU Finance Department faculty, he was denied these additional

accommodations, and consequently, FIU failed to properly provide the reasonable accommodations, in accordance with the applicable statutes, and the pertinent internal University governance policy, FIU Policy, No. 106.

28. On January 11, 2019, the Plaintiff informed the department head for his program, within the Finance Department, Dr. Edward Lawrence, that in accordance with the DRC approval of the three prior accommodations, he would, at least need, the use of a digital recorder, allowing additional time on course examinations, and the placement in a minimal distraction examination room, in order to be successful in Dr. Lawrence's course work, during the forthcoming 2019 Spring Semester.

29. On January 15, 2019, DRC notified the Plaintiff's instructors, Dr. Edward Lawrence, Dr. Xiaoquan Jiang, Dr. Diogo Duarte, of his approved accommodations, namely, the use of a digital recorder, allowing additional time on examinations, and the placement in a minimal distraction examination room.

30. However, on January 17, 2019, Dr. Jiang presented a 164-page document in the classroom, as a presentation, but Plaintiff was unable to digest and process this material, his request for a paper copy of the document was denied, without any business reason or justification.

31. On January 30, 2019, Dr. Lawrence singled out the Plaintiff in class, to answer difficult questions, the Plaintiff privately informed Dr. Lawrence of his disability, but Plaintiff was mortified, by the professor's conduct, in classroom on that day, without being granted all of the requested accommodations, it was difficult for the Plaintiff to fully participate in the classroom discussions.

32. On January 31, 2019, Plaintiff had a private meeting with Dr Jiang, explaining that he was having difficulty processing information, in his class because of his disabilities; however, Dr. Jiang indicated that he was not familiar with dealing with persons with disabilities, and moreover, and rather than working with the Plaintiff, to secure his accommodations, Dr. Jaing suggested that the Plaintiff drop out of the program.

33. On February 8, 2019, after speaking with Dr. Lawrence, in a public area, Dr. Oztekin approached the Plaintiff to ask about a missing assignment from the previous semester, this discussion was held in front of classmates and several faculty members, the Plaintiff assured Dr. Oztekin that he would immediately address this issue.

34. Dr. Oztekin further stated to the Plaintiff that she needed to get Dr. Lawrence and the Department Chair, Dr. Hamid, "off her back," and that therefore, the missed assignment needed to be submitted to her immediately, otherwise, Dr. Lawrence and the Department Chair would continue to "pressure her," regarding the issuance of the grades, which she had previously provided to the Plaintiff.

35. On February 24, 2019, Dr. Lawrence failed to submit important preparation documents, known as "solutions," to the Plaintiff, to enable him to prepare for the mid-term examination; however, but conversely, Plaintiff's classmates received the documentation.

36. On February 19, 2019, in a conversation with the Plaintiff, Dr. Jiang, wherein, Dr. Jiang minimized the impact of the Plaintiff's disabilities on his work, and Dr. Jiang further noted that he was giving the Plaintiff too much time to complete his assignments.

37. On March 6, 2019, the Plaintiff went to the DRC office, in order to take Dr. Lawrence's mid-term exam, but because he was not previously provided, with the correct "solutions," or test preparation documents, to study, and this state of affairs occurred because he could not adequately complete his homework assignments because of his disability, and hence, he could not complete or even hope to be competitive, with regard to the examination.

38. On March 8, 2019, in a discussion with Dr. Lawrence, Dr. Jiang apparently indicated that he intended to issue the Plaintiff a failing grade for the previous semester, but Plaintiff explained to Dr. Lawrence, that he was having difficulty with completing class assignments, because of his disability, however, Dr. Lawrence stated to the Plaintiff, that he (Lawrence), agreed with Dr. Jiang's assessment, and that the faculty, needed "to protect the profession."

39. "Protecting the profession," apparently means, excluding those doctoral candidates, with disabilities.

40. Dr. Lawrence further stated that he had not previously dealt with a student, with a disability before, and that therefore, he would not accept an applicant to the Finance Program in the future, because the Program was "very rigorous."

41. On March 17, 2019, Dr. Lawrence improperly accused the Plaintiff of plagiarism, when he was merely, working together, with another classmate, and the classmate was assuming the role of "tutor," in assisting the Plaintiff because of his disability.

42. By falsely claiming that the Plaintiff was engaging in "plagiarism," Dr. Lawrence was evidencing his inherent hostility, in terms of interacting with the Plaintiff, as "a qualified

10

individual with a disability," the Plaintiff told the faculty that he needed "tutoring" help, to accommodate his disability.

43. In a conversation with the Plaintiff on March 18, 2019, Dr. Lawrence advised the Plaintiff, to resign from the Finance Program and find another professional avenue for his future; Plaintiff responded by saying that he could compete in the Finance Program with the proper reasonable accommodations.

44. Dr. Lawrence proceeded to lower the Plaintiff's grade, making his grade the lowest in the class, without providing procedural due process.

45. On May 29, 2019, although Dr. Lawrence provided the Plaintiff with a make-up examination, the Plaintiff was improperly penalized, on the basis of his disability, since his score was substantially lowered, as a function of taking the make-up exam, since at the initial examination, he had been discriminated against on this basis of his disability, by not being provided with the requisite preparation documents, known as, "solutions," prior to the taking of the first examination.

46. On April 18, 2019, the Plaintiff was finally able to obtain Dr. Jiang's lecture notes, in preparation for the final examination, as noted above, he had previously asked for these notes, on January 17, 2019, the fact that the notes had not been provided previously, was evidence of the Plaintiff being penalized on the basis of his disability, since those documents were needed for course preparation, and the faculty was advised that the Plaintiff needed the lecture notes, to accommodate his disability.

47. On April 28, 2019, the Plaintiff took the final examination in Dr. Lawrence's class, but his performance on the test was penalized, on the basis of his disability, because he had been behind in completing his homework, and he was behind in completing his homework, because of not receiving accommodations for his disability.

48. On April 25, 2019, the Plaintiff could not properly take Dr. Jiang's examination, since the Plaintiff had not been given, the proper opportunity with accommodations, to complete the prior required course and class work, in preparation for the examination.

49. On May 2, 2019, the Plaintiff received his final grades for the Spring semester, and because he had not been granted the accommodations as requested, his grades did not satisfy the requirements for staying in the FIU Finance Program, and hence, he was then excluded from the Finance Program, and he then, as a result of being barred from the Finance Program, lost his position as a Graduate Assistant, with FIU.

50. Specifically, the Plaintiff's grades for the Summer, 2019 and Fall, 2019 terms had been marked as incomplete, however, because he was not provided with the requested reasonable accommodations, he was unable to properly remediate his grades, and the incomplete grades subsequently became failing grades, in the Plaintiff's course work with Professor Qiang Kang.

51. Plaintiff was precluded from completing his course work, which previously been marked as incomplete, within two terms of Summer 2019, as required under FIU university policy.

52. Plaintiff timely appealed the prior determination by the Academic Grievance Committee, dated January 13, 2020, to the FIU Office of the Provost on January 22, 2020.

53. On March 31, 2020, the FIU Office of the Provost, suggested that the Plaintiff seek a medical withdrawal of one of his grades, from the FIU Office of the Registrar.

54. On May 22, 2020, Plaintiff filed a timely appeal, with the FIU Office of Inclusion, Diversity and Equity, and he requested a full and complete review, on the issue of possible violations by the University, with its internal governance Policy, No. 106, which prohibits discrimination, based on a disability.

55. On May 24, 2020, the FIU Office of Inclusion, Diversity and Equity conducted a review into the Plaintiff's allegations that the FIU faculty and administration, violated FIU Policy 106, as it relates to discrimination, based on a disability, however, that office found that the allegations were not substantiated by a preponderance of the evidence.

56. Because the FIU Office of Inclusion, Diversity and Equity, found that the Plaintiff had not proven his allegations by a preponderance of the evidence, and it therefore held that the Plaintiff was not entitled, to any substantive relief, under its internal governance policies and procedures.

57. Plaintiff fully exhausted any applicable administrative remedies, offered by FIU, to address the discrimination of employees, based on a disability.

**COUNT I**
**(VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, DISABILITY DISCRIMINATION, FAILURE TO PROVIDE A REASONABLE ACCOMMODATION)**

58. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—56 of the Complaint, as if fully set forth herein.

59. Plaintiff has set forth a valid claim of disability discrimination, specifically, the failure to provide a reasonable accommodation, since: (a) he is person with a disability under the ADA; (b) the employer was covered by the statute and the employer had notice of the disability; and (c) with a reasonable accommodation, Plaintiff could perform the essential functions of the position at issue; and (d) the employer has refused to make such an accommodation, even though the requested reasonable accommodation would not cause the Defendant employer to experience an undue burden and or hardship.

60. AMY possessed the requisite knowledge, skill, and experience, to perform the essential functions of the teaching position, with the Defendant herein, designated as an Graduate Assistant/Student.

61. AMY, was, and continues to be "a qualified individual with a disability," under the Americans with Disabilities Act, 42 U.S. C. Section 12101, *et seq.*, and the 2009 amendments, thereto, since Plaintiff had suffered from Attention Deficit and Hyperactivity Disorder ("ADHD"). which can affect, or impair a major life activity, by causing a cognitive impairment, namely, the inability to timely process data and or information; however, he was still capable of performing the essential functions of his prior position, Graduate Assistant/Student, provided he was provided with the requested, reasonable accommodations.

62. Defendant failed, and or refused, to provide the requested reasonable accommodations, even though, other comparator employees, similarly situated to the Plaintiff, were provided with the reasonable accommodations, requested by the Plaintiff, and the reasonable

accommodations were granted by the administration, to other similarly situated employees, in an arbitrary, capricious, and in a discriminatory manner.

63. In short, Plaintiff claims that the Defendant employer continued to discriminate against him, as a qualified individual with a disability, under the ADA, and the amendments thereto, ADAAA of 2009, since, Plaintiff had suffered from Attention Deficit and Hyperactivity Disorder, with medical conditions that include, an inability to process data and or information, which can, and do impair major life activities; however, and he was still capable of performing the essential functions of his prior position, as an instructional staff member, the position of Graduate Assistant/Student, with the requested reasonable accommodation.

64. Management failed to take any reasonable steps to address the reasonable accommodation, which Plaintiff had requested based, upon his disability, which can, impair the following major life activities, timely processing of data and or information, consistent with Plaintiff's status, as a "qualified individual with a disability," under the ADA, 42 U.S. C. Section 12101, *et seq.*, and the 2009 amendments thereto.

65. The Defendant's conduct in failing to grant the requested accommodations, requested by the Plaintiff, violated both the ADA, 42 U.S. C. Section 12101, *et seq.*, and the 2009 amendments thereto, as well as FIU's inter governance policy and procedure, as found in its internal Policy No. 106.

66. The Defendant's conduct in failing to grant the requested accommodations, requested by the Plaintiff, violated both the ADA, 42 U.S. C. Section 12101, *et seq.*, and the 2009

amendments thereto, caused him to lose his position with FIU, without any legitimate business reason and or justification.

67. As a direct result of the Defendant's unlawful conduct, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, DANIEL AMY, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to grant the following substantive relief:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

B) Grant an award of back pay, including any and all applicable job benefits, and against the Defendant;

C) Grant an award of front pay, including all wages lost in the future, based on the Defendant's unlaw conduct, in violating under the ADA, 42 U.S. C. Section 12101, *et seq.*, and the 2009 amendments thereto;

D) Grant an award of compensatory damages against the Defendant; and

E) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

## COUNT II
### (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, DISABILITY DISCRIMINATION, RETALIATION)

68. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—56 of the Complaint, as if fully set forth herein.

69. On November 1, 2018, Plaintiff engaged in *protected activity*, by requesting additional reasonable accommodations, from the FIU Disability Resource Center ("DRC"), namely, the use of a digital recorder, allowing additional time for the taking of examinations, and the placement in a minimal distraction examination room.

70. The Faculty of the FIU Finance Department were charged with the responsibility of granting these accommodations, they had knowledge of the Plaintiff's disability, and they had knowledge of the fact that he requested reasonable accommodations with both the FIU Finance Department faculty and with the DRC.

71. The ADA anti-retaliation provision, found at 42 U.S.C. Section 12203 (a), entitled, "Prohibition Against Retaliation and Coercion," reads in pertinent part, as follows:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

72. There was causal connection, between the Plaintiff's prior expression of protected activity, and the series of predicate acts of retaliation, the series of adverse acts, as set forth in Paragraphs Nos. 30—48, which ultimately resulted in the ultimate adverse action, his exclusion from the FIU Finance Department doctoral program, the culmination of the

retaliatory acts taken by the Defendant against the Plaintiff, on May 2, 2020, causing the loss of his employment with FIU, *see* Paragraph 49 of the Complaint above.

73. The Defendant's retaliatory conduct, as set forth in Paragraph 72 above, violated the anti-retaliation provision of the ADA, 42 U.S.C. Section 12203 (a), entitled, "<u>Prohibition Against Retaliation and Coercion</u>," resulting in both pecuniary and non-pecuniary losses.

74. As a direct result of the Defendant's unlawful conduct, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, DANIEL AMY, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to grant the following substantive relief:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

C) B) Grant an award of back pay, including any and all applicable job benefits, and against the Defendant;

D) Grant an award of front pay, including all wages lost in the future, based on the Defendant's unlaw conduct, in violating under the ADA, 42 U.S. C. Section 12101, *et seq.*, and the 2009 amendments thereto;

E) Grant an award of compensatory damages against the Defendant; and

F) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

### Demand for Trial by Jury

Plaintiff requests trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

Dated on this 3rd day of June, 2022.