UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:22-cv-21719-DPG

DANIEL AMY,

    Plaintiff,

vs.

THE FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES,

    Defendant.
_____/

**<u>DEFENDANT'S REPLY STATEMENT OF MATERIAL FACTS</u>**

**FIU'S REPLY STATEMENT OF MATERIAL FACTS**

Defendant, THE FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, and S.D. Fla. L.R. 56.1, hereby files its Reply to Plaintiff's Statement of Material Facts [ECF No. 57], and states:[1]

2. Disputed. FIU's policies pertaining to the Disability Resource Center ("DRC") and Qualifying for Services are not a question of law. ECF No. 53-24.

9. Disputed, but immaterial, given statements are not responsive to Defendant's Paragraph 9.

10. Disputed. Defendant does not contend Plaintiff was assigned teaching duties. In fact, pursuant to the General Terms and Conditions of Graduate Assistantship, during the first semester of the program, the assistantship does not involve a teaching assignment. ECF No. 53-2.

18. Disputed. Fringe benefits "supplement" an employee's salary, and Plaintiff concedes that a health insurance premium was deducted from Plaintiff's stipend. ECF No. 54, ¶ 11.

22. Undisputed. Defendant notes that registered simply means with the DRC.

23. Undisputed. However, Defendant asserts that the statements and materials cited do not establish the absence or presence of a genuine dispute as to the content of Dr. Kato's Notes provided to the University. Even if accommodations were not discussed, the only "associated signs and symptoms" under Plaintiff's history of present illness were "decreased attention and concentration and fidgety"

---

[1] FIU submits this Reply to Plaintiff's counterstatement of its Material Facts set forth in ¶¶ 1-78 and Additional Facts set forth in ¶¶ 79-105 to clarify the facts of the case and direct the Court to accurate citations of indisputable record evidence to demonstrate that no genuine issue of material fact exists. Plaintiff's Statement of Material Facts fail to fully comply with the letter and spirit of the Court's Local Rules. *See e.g., South v. Progressive Select Ins. Co.*, 2021 WL 1053280, at *1 (S.D. Fla. Feb. 11, 2021). Plaintiff's Statement of facts cites primarily to Plaintiff's Declaration, rather than supporting each fact by "specific, pinpoint references to particular parts of record material" as is required under S.D. Fla. Local Rule 56.1(b)(1)(B). In addition, Plaintiff's Declaration does not cite to specific record material, making it difficult for Defendant and this Court to find the relevant record evidence. Moreover, Plaintiff violated Local Rule 56.1(a)(2) and (b)(2), and Fed. R. Civ. P. 56(c)(1), by asserting additional facts to clarify, limit, or contextualize Defendant's proposed facts that do not clearly challenge, contradict or "genuinely dispute" the proposed fact, rather than asserting the proposed additional facts "separately" under the title "Additional Facts". *See e.g., Silverstein v. Boehringer Ingelheim Pharm., Inc.*, 2020 WL 6110909, at *5 (S.D. Fla. Oct. 7, 2020). Accordingly, Plaintiff's "additional facts" likely exceed the allotted five (5) pages. *See* S.D. Fla. Local Rule 56.1(b). Lastly, Plaintiff's additional facts exceed the local rules with improper opinions, inferences for jury (¶¶ 25, 62, 73, 76, 77), and evidentiary arguments.

and Plaintiff's thought process and affect was within normal limits; no learning disability was listed. ECF No. 53-3. [2]

24. Disputed to the extent that the statements and materials cited in Plaintiff's Paragraph 24 do not indicate what learning disabilities were explained to Dr. Loynaz.

25. Disputed. In the Spring of 2021, Mr. Loynaz notified Dr. Lawrence that Amy "would like to know if it was possible to get copies of Powerpoints and lecture notes". ECF No. 53-10, pp. 19-22. Dr. Lawrence advised Loynaz that he did not use any PowerPoint slides or printed notes for his class. *Id*. Instead, due to the impact of Covid and the class being conducted through Zoom, Dr. Lawrence indicated that he used an IPad as a whiteboard alternate and converted the class notes he wrote on One-notes into a pdf file which he posted on Canvas each week in addition to posting the entire lecture. *Id*. Loynaz stated that this was a good substitution. *Id*. Further, Defendant asserts that the statements and materials cited in Plaintiff's Paragraph 25 do not establish the absence or presence of a genuine dispute as to whether lecture notes were generally provided as an option and why.

26. Disputed but immaterial for summary judgment purposes. The identity of the student requiring notes is not disclosed to the peer note taker. ECF No. 53-10, pp. 4, 10-13. Plaintiff rejected a peer Notetaker as an accommodation, yet asked his classmates to tutor him and advised them of his situation. ECF No. 57-1, ¶ 44; ECF No. 53-12, pg. 6-7. Plaintiff states that his classmates were aware of his situation as of March 8, 2019. *Id*.

27. Disputed. Plaintiff declared that the digital recording provided him with the advantage of replaying the recorded lecture over and over in order to transcribe the spoken language into written notes that he could use for studying. ECF No. 57-1 at ¶ 18.

35. Disputed. Plaintiff did not request lecture notes from Dr. Lawrence until the Spring 2019 semester. ECF No. 57-1 at ¶ 23.

36. *See* Response to Paragraph Number 35.

39. Disputed as to the additional statement that a reduced coarse load and copies of lecture notes were necessary to give Amy an equal opportunity to benefit the program. This statement is self-serving and conclusory legal argument.

41. Disputed to the extent that the statements and materials cited in Plaintiff's Paragraph 41 regarding penalizations is not supported by any record evidence.

---

[2] HPI is the medical abbreviation for history of present illness; WNL is the abbreviation for within normal limits.

42. Disputed to extent that the statements cited in Plaintiff's Paragraph 42 are self-serving and conclusory legal arguments made to counter statements undisputedly made by Plaintiff.

47. Disputed. No reason as to why Dr. Jiang did not provide lecture notes. ECF No. 53-12, pp. 15-16.

50. Disputed. *See* Response to Paragraph Number 25.

56. Disputed as to the fact that the statement regarding the "incomplete" in the Summer course effectively terminated his enrollment is not supported by any record evidence.

69. Disputed. *See* Response to Paragraph Number 94.

## Additional Facts

79. Undisputed.

80. Undisputed.

81. Disputed. This form is dated in 2021-2022. Plaintiff was a graduate assistant for the 2018-2019 term only. ECF No. 57-1, pg. 14. No such requirement is included in the general terms of conditions signed by Plaintiff. ECF No. 53-2. Further, it is inapplicable and has not been authenticated.

82. Disputed. The Psychological Evaluation expressly indicates that Plaintiff has a "specific learning disorder with impairment in written expression" and repeatedly states that Plaintiff is experiencing difficulty with learning in the area of writing. ECF No. 53-4. It further indicates that his verbal comprehension abilities are at the 99th percentile. *Id*. Plaintiff's self-determination that he has a learning disability which takes him "a considerable time to convert spoken language into written notes" was effectively accommodated by allowing him to record the lectures and automatically convert into written notes via technology at his own pace. This psychological evaluation providing FIU with additional information as to Plaintiff's disability was not produced until <u>after</u> the 2019 Spring semester.

83. Disputed. Plaintiff admitted that he did not ask all of his professors in the Fall 2018 or Spring 2019 semester for lecture notes. ECF No. 57, ¶¶ 35-36, 46.

84. Undisputed.

85. Disputed, but immaterial, as self-serving and conclusory.

86. Disputed. Plaintiff admitted to receiving lecture notes and other written materials from certain Professors. ECF No. 57, ¶¶ 34-36, 47. Further, *See* Response to Paragraph Number 39.

87. Disputed in part. The accommodations provided by FIU were effective accommodations considering the medical documentation provided by Plaintiff. There is no record evidence to support

3

that Dr. Lawrence and Dr. Hamid told Amy that his poor grades prevented him from continuing in the program regardless of his performance on the qualifying exam. In fact, Lawrence and Hamid attempted to reschedule Plaintiff's qualifying exam despite his poor grades. ECF No. 53-8. Paragraph 87 is riddled with opinions on effectiveness which should be left to this Court.

88. Disputed.

89. Disputed to the extent that Plaintiff's graduate assistantship was dependent on his academic enrollment in the doctoral program and Plaintiff could not enroll in the second-year courses without taking and passing the qualifying exam. ECF. No. 53-4; ECF No. 54-6.

90. Disputed to the extent that Plaintiff was expressly advised that his initial grades would remain on his transcript if he repeated the courses. ECF No. 53-7; 53-8.

91. Disputed in part. Plaintiff was not permitted to continue in the program because he did not take the qualifying exam, not because of his Spring 2021 grades. ECF No. 54, ¶¶ 6, 70-72.

92. Disputed. Plaintiff received poor grades in 2019 despite receiving several accommodations from FIU to accommodate his disability. ECF No. 54, ¶¶ 41-43.

93. Disputed to the extent that the DRC did not "mandate" the specific accommodations requested by Plaintiff. *See* Response to Paragraph Number 25.

94. Disputed. *See* Response to Paragraphs 91 and 92. Further, 15 points were awarded to each member of the class including Plaintiff giving Plaintiff a higher grade.[3]

95. Disputed but immaterial for summary judgment purposes.

96. Disputed. FIU, including Loynaz, Lawrence, and Hamid, provided Amy with the effective accommodations of the Sonocent Notetaker application, additional time for exams and other assignments, and a minimal distraction testing room to accommodate his ADHD and lack of concentration. ECF No. 54, ¶¶ 23, 29, 32. Upon receiving additional medical documentation indicating certain learning disabilities and suggesting certain accommodations, the DRC provided further accommodations. ECF No. 54, ¶¶ 59-60.

97. Undisputed for summary judgment purposes only.

98. Disputed. Plaintiff's statement regarding Dr. Lawrence's acknowledgment is not supported by record evidence. *See* Response to Paragraph Number 82. Pursuant to Plaintiff's written statement provided to the IDEA, on January 30, 2019, Dr. Lawrence asked the class to answer eight questions

---

[3] FIU attaches hereto the documentation to support its position.

and looked over all of the students' shoulders as they wrote down solutions during the first half of the lecture. ECF No. 53-12, pp. 4-5; ECF No. 57 at ¶ 51. Dr. Lawrence directed one question to Plaintiff because it "did not involve mathematics." *Id*. During a brief break, Plaintiff advised Dr. Lawrence of the nature of his disability. *Id*. Dr. Lawrence did not single Plaintiff out after the class resumed. *Id*.

99. Disputed as incomplete. According to Plaintiff's written statement provided to IDEA, on March 8, 2019, Dr. Lawrence advised Plaintiff that Dr. Jiang told Dr. Lawrence that Plaintiff had not handed in a single homework for his class yet this semester. ECF No. 53-12, pp. 7-9. Dr. Lawrence further advised that Dr. Jiang told Dr. Lawrence that if Plaintiff did not hand in the homework assignments, Dr. Jiang would have to fail Plaintiff for the course, to which Dr. Lawrence agreed. *Id*.

100. Disputed but immaterial for summary judgment purposes.

101. Undisputed to the extent that Dr. Lawrence did not explain why the requested accommodations would adjust the program structure.

102. Disputed. Dr. Lawrence gave Plaintiff a lower grade because Plaintiff stated that the other student tutored him and taught him the proofs. ECF No. 53-12, pp. 9-11; ECF No. 53-19. Plaintiff met with Dr. Lawrence and expressed that his classmate should not be penalized for helping him. *Id*. Plaintiff was not penalized for plagiarism in either Homework Assignment. *Id*. The Grievance Committee determined the grade earned by Plaintiff was not solely based on his academic performance but on Dr. Lawrence's perception on ethics. *Id*. The Committee further determined that any grade adjustments based on the plagiarized assignments would not have altered the final grade.[4]

103. Disputed but immaterial for summary judgment purposes.

104. Disputed. Dr. Lawrence's advised that his midterm would be based primarily on homework assignments 4, 5, and 6. ECF No. 53-12, pp. 6-7. At this point, Plaintiff had only submitted homework assignments 1 and 2. *Id*. Plaintiff submitted assignment 3 on February 21, 2019 and assignments 4 and 5 on February 24, 2019. *Id*. Plaintiff took the midterm for Dr. Lawrence's class on March 6, 2019. *Id*. Dr. Lawrence accused Plaintiff of plagiarizing Assignments 4 and 5. ECF No. 53-19, pp. 3, 6-15. Assignments 6, 7, and 8, were submitted after the **final** exam dated April 24, 2019. *Id*., pp. 11-12.

105. Undisputed.

---

[4] FIU attaches hereto the documentation to support its position.

I HEREBY CERTIFY that on this 4th day of December, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> WYDLER LAW
> *Attorneys for Defendant*
> 2600 Douglas Road, PH-4
> Coral Gables, FL 33134
> (305) 446-5528
> (305) 446-0995 (fax)
>
> BY  /s/  Lourdes Espino Wydler
>    LOURDES ESPINO WYDLER
>    F.B.N.: 719811
>    lew@wydlerlaw.com
>    LAUREN D. MARTIN
>    F.B.N.: 1034166
>    ldm@wydlerlaw.com
>    Secondary E-mails:
>    dinah@wydlerlaw.com
>    guertty@wydlerlaw.com

**SERVICE LIST**

G. Ware Cornell, Jr., Esq.
Florida Bar Number 203920
Cornell & Associates, PA
2645 Executive Park Drive
Weston, FL 33331
(954) 641-3441
(954) 383-5161
ware@warecornell.com
brittne@warecornell.com
*Counsel for Plaintiff*



January 13, 2020

*Via email to Daniel Amy <damy001@fiu.edu>*

**SUBJECT: Formal Grievance Hearing Decision Letter**

Dear Mr. Amy:

In accordance with the FIU Grievance Policies and Procedures, on December 12, 2019, a hearing was held for a formal grievance filed by you (the complainant) against Dr. Edward Lawrence. Specifically, you alleged arbitrary and capricious grading in FIN 7809: Financial Theory II in spring of 2019 and FIN 7906: Finance Doctoral Independent Study in summer 2019.

The members of the Graduate Student Academic Grievance Committee included the following individuals:
- Chair and Faculty Member: Dr. Carleen Vincent-Robinson, School of International & Public Affairs
- Faculty Member: Phyllis Kotey, J.D., College of Law
- Faculty Member: Dr. Amy Paul-Ward, Nicole Wertheim College of Nursing and Health Sciences
- Graduate Student Member: ███████, College of Arts, Sciences, and Education
- Graduate Student Member: ███████, College of Arts, Sciences, and Education

During the hearing, you were present along with Dr. Edward Lawrence.

After a review of the case, in regards to the allegation of arbitrary and capricious grading in FIN 7809, the Committee provided the following information and conclusions:

1) During the Spring 2019 term, Mr. Amy enrolled in FIN 7809 wherein Dr. Edward Lawrence served as the instructor of record.
2) Two assignments, Homework 4 and 5, were at issue.
3) Dr. Lawrence had been previously made aware that Mr. Amy would be seeking the assistance of his classmates to learn the material.
4) On March 17, 2019, Dr. Lawrence accused Mr. Amy and ███████ of submitting identical assignments. Later that evening, Dr. Lawrence informed Mr. Amy and ███████, via e-mail, that based upon his belief that they engaged in academic misconduct (i.e., plagiarism), both students would both receive a grade of 0 on the homework assignments in question.
5) On March 18, 2019, Dr. Lawrence informed Mr. Amy that, as he was aware that ███████ had completed her work, he would award ███████ the points earned—not the 0 previously discussed. Mr. Amy, however, would receive a different and lower grade based upon his academic misconduct.



**Office of the Provost**
FLORIDA INTERNATIONAL UNIVERSITY

6) Dr. Lawrence also indicated that another student, ▮▮▮▮ had worked individually on his assignments and that, based upon Dr. Lawrence's perception that Mr. Amy engaged in misconduct, it would be "unjust, unfair and illegal" for ▮▮▮▮ to earn a lower grade than Mr. Amy. Dr. Lawrence's assertion that Mr. Amy's grade should be lower than that of ▮▮▮▮ was based upon Dr. Lawrence's personal values and work ethics—not the students' performance.

7) Ultimately, Dr. Lawrence awarded Mr. Amy and ▮▮▮▮ different grades for the assignments that Dr. Lawrence asserted are identical and the result of plagiarism and further lowered Mr. Amy's grade based upon Dr. Lawrence's perception of ▮▮▮▮ ▮▮▮▮ work ethic.

8) After careful review, the Graduate Student Academic Grievance Committee concurs that Mr. Amy was held to a different standard than his peers, that Dr. Lawrence significantly departed from previously articulated standards, and that the grade earned in FIN 7809 was not solely based upon Mr. Amy's performance in the class including, but not limited to, Homework 4 and 5. Accordingly, the Committee finds that Mr. Amy presented sufficient evidence of arbitrary and capricious awarding of grades for said course.

Based on a review of the case materials and the explanation provided by the hearing committee, I concur with their decision of sufficient evidence of arbitrary and capricious awarding of grades for said course.

Accordingly, the committee strongly recommends that department faculty receive training in what academic misconduct entails along with training regarding the Univeristy's current Student Conduct and Honor Code and related procedures.

Based on a review of the grading criteria in FIN 7809, Mr. Amy's grade will stand as awarded, as any grade adjustments based on the assignments referenced above will not alter the final grade.

After a review of the case, in regards to the allegation of arbitrary and capricious grading in FIN 7906, the Committee provided the following information and conclusions:

1) During the Summer 2019 term, Mr. Amy enrolled in FIN 7906, wherein Dr. Edward Lawrence served as the instructor of record.

2) Dr. Lawrence and Mr. Amy failed to communicate during the Summer 2019 term. As such, Mr. Amy did not submit any assignments for this course.

3) Dr. Lawrence had been previously made aware of a medical condition that Mr. Amy experienced during the Spring 2019 term and that continued into the Summer 2019 term. Based upon that information, rather than issuing a failing grade, Dr. Lawrence issued a grade of Incomplete for FIN 7906.

4) After careful review, the Graduate Student Academic Grievance Committee finds that although there is not a syllabus for this course, Mr. Amy was not held to a different standard than his peers and that Dr. Lawrence did not significantly depart from previously articulated standards. Moreover, per the university's policy, students who are unable to successfully complete an academic term due to no fault of their own may, at the



instructor's discretion, be issued an Incomplete. Accordingly, the Committee finds that Mr. Amy did not present sufficient evidence of arbitrary and capricious awarding of grades for said course and that Dr. Lawrence was within his right to issue an Incomplete for said course.

Based on a review of the case materials and the explanation provided by the hearing committee, I concur with their decision of insufficient evidence of arbitrary and capricious awarding of grades for said course.

However, the committee strongly recommends that all courses within the department including, but not limited to those related to independent study preparation, have syllabi delineating the requirements for successful completion. In addition, all program requirements should be made clear on the department webpage and the student handbook.

Please be advised that according to the grievance policy (https://policies.fiu.edu/files/739.pdf), the complainant has the right to appeal this decision. Additional information for this process can be found in the policy document.

Best Regards,

Kristin Nichols-Lopez, Ph.D.
Faculty Fellow for Academic Integrity, Office of the Provost

cc: Joanne Li, Ph.D. Ryder Eminent Scholar Chair in Business, Dean, College of Business

---------- Forwarded message ---------
From: **Edward Lawrence** <elawrenc@fiu.edu>
Date: Mon, Apr 26, 2021 at 12:02 PM
Subject: Re: Exam2 Feedback and Exam Key
To: Daniel Amy <damy001@fiu.edu>


Hello Daniel,
The course comprises three assessments, homework, exam1, and exam2. The average score in homework was about 96% and for exam1 average was about 82%. The average score for Exam2 was about 67%. The comparatively lower average for exam2 among assessments is why I curved the Exam2 scores. This is the answer to your first question.
I simply curved the Exam2 scores to make the max. score a 100. This is how the 15 bonus points are calculated. This is the answer to your second question.
Pl. let me know if you have additional questions.
thanks
Edward

---

**From:** Daniel Amy <damy001@fiu.edu>
**Sent:** Monday, April 26, 2021 10:33 AM
**To:** Edward Lawrence <elawrenc@fiu.edu>
**Subject:** Re: Exam2 Feedback and Exam Key

Good morning Dr. Lawrence,

Thank you for providing this information on the final exam.

I have reviewed the attachment you provided where you detail the rationale and calculations you used to award points for each question on my exam. However, there was no mention in the documents or your email of your rationale and calculation for the bonus points you assigned.

Right now I can only think of two questions regarding the final exam grade.

1. What was your motivation for awarding bonus points to the final exam?
2. How did you arrive at the determination/calculation to award 15 points as a bonus to each member of the class for the final exam?

Kind regards,

Daniel


On Sun, Apr 25, 2021 at 7:18 PM Edward Lawrence <elawrenc@fiu.edu> wrote:
> Hello Daniel,
> I have graded your exam2 and am enclosing a file that details exactly how the allocation of points is done for each question. You have earned 50 points in Exam2. I have added a bonus of 15 points for everyone in the class. Your posted grade for exam2 is therefore 65/100.
> I am enclosing Exam Key that tells you where exactly to locate the answers for each of the questions asked in Exam2.

2

> Your weighted total with bonus is 85/100 and you have a B grade in the course. I will post the final grades tomorrow.
> Pl. let me know if you have any questions.
> thanks
> Edward